# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELROY HENDERSON, #M20461, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 19-cv-00432-NJR ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, LT. BEBOUT, JONATHAN WEBB, DONALD ROUNDTREE, BRYAN EISENHOUER, AIMEE LANG, REVA EMGELAGE, A. WILLIAMS, and JOHN DOES, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Elroy Henderson, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pontiac Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. Plaintiff claims that while he was housed at Menard Correctional Center ("Menard"), officials used excessive force upon him, failed to intervene, and were deliberately indifferent to his serious medical needs. He seeks monetary damages and injunctive relief. (Doc. 1, pp. 11-12).[1]

---

[1] Based on the pleadings, it appears that Plaintiff is not actually seeking injunctive relief, but rather a declaratory judgment that Defendants committed aggravated battery and official misconduct.

1

Plaintiff's Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

According to the allegations in the Complaint, on April 23, 2017, Plaintiff was involved in a physical altercation with several correctional officers and prisoners. (Doc. 1, p. 2). He was sprayed with oleoresin capsicum (O.C.) spray and placed in restraints. *Id.*, pp. 2-3. As he was being escorted by several unknown correctional officers and Defendant Webb to the Healthcare Unit ("HCU") to be decontaminated, they assaulted him. *Id.*, pp. 2-3, 6. They then finished escorting him to the HCU.

Defendants Williams and Emgelage, nurses at the HCU, took him to an exam room, where they were met by another nurse, Defendant Lang. *Id.*, p. 3. Williams left the room as Lang filled out paperwork, and Emgelage rinsed the O.C. spray off Plaintiff. *Id.* An unknown corrections officer (John Doe #1) asked the nurses to leave the room, which they did. *Id.*, pp. 3-4. Defendants Bebout, Roundtree, Webb, Eisenhouer, and Doe #1 then severely beat Plaintiff, including spraying O.C. into a plastic bag and then placing it over his head. *Id.*, pp. 4-5. He sustained severe injuries which required him to be rushed to the hospital. *Id.*, p. 5. Plaintiff sustained significant permanent physical and mental injuries. *Id.*, pp. 5-6. Williams later wrote a falsified incident report to cover up the circumstances of the assault in the examination room. *Id.*, pp. 9-10.

DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the claims in this case into the following five Counts:

**Count 1**: Eighth Amendment excessive force claim against Webb, Roundtree, Bebout, Eisenhouer, John Doe #1, and the other John Doe defendants, as well as a failure to intervene claim against Williams, Lang, and Emgelage.

**Count 2**: Fourteenth Amendment equal protection claim against all Defendants.

**Count 3**: Eighth Amendment deliberate indifference to a serious medical need claim against Lang, Williams, and Emgelage.

**Count 4**: Eighth Amendment failure to protect claim against Lang, Williams, and Emgelage.

**Count 5**: Conspiracy claim against all Defendants

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

As an initial matter, IDOC is dismissed as a party. Although Plaintiff names IDOC in the caption of his complaint, he fails to list it elsewhere in his complaint, so the Court is unable to ascertain what claims, if any, Plaintiff has against it. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face"). This includes any claims Plaintiff asserts under the Fifth Amendment. He alleges misconduct in violation of the Fifth Amendment, but offers no additional facts or associates this claim with any defendants. (Doc. 1, p. 4).

3

defendant's name in the caption."). Further, IDOC is not a "person" subject to suit under Section 1983. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). As such, it will be dismissed.

**Count 1**

Plaintiff alleges that the beating on the way to the HCU and the assault in the HCU examination room were uses of excessive force. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Plaintiff has adequately alleged that Defendants Bebout, Roundtree, Webb, Eisenhouer, John Doe #1, and the other John Doe defendants assaulted him and that the assaults were malicious and sadistic.[3]

Plaintiff has also adequately stated a claim for failure to intervene in the examination room beating against Lang and Emgelage, though not Williams. Technically, "failure to intervene" is not a stand-alone claim, but rather a theory of personal involvement when someone other than the defendant actually committed the wrong. A defendant in a Section 1983 claim may be liable for failure to intervene if they (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).

---

[3] Generally, the use of John Doe designations for indefinite groups of individuals is highly frowned upon. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Plaintiff must make plausible allegations against individuals. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). In this instance, however, the Complaint sufficiently describes the unknown defendants (the other correctional officers escorting him to the HCU) and their conduct to allow for their eventual identification and put them on notice of what they are claimed to have done.

The Court is unaware of any authority touching on whether prison healthcare staff have a duty to intervene if they observe one or more corrections officers beating a prisoner. A state officer's conduct does not constitute acting under color of state law unless it is "related in some way to the performance of the duties of the state office." *Honaker v. Smith,* 256 F.3d 477, 484-85 (7th Cir.2001) (internal quotations omitted). At least one other court in this circuit has found that a failure-to-intervene claim can extend to state actors in an arguably similar context, where firefighters who see another firefighter assault a bystander and fail to act. *Ali v. Vill. of Tinley Park*, 79 F. Supp. 3d 772, 778 (N.D. Ill. 2015). In a case where a paramedic allegedly assaulted a patient, however, a court dismissed a failure-to-intervene theory against other paramedics who stood by and watched because they were not actively performing paramedic duties at the time and were therefore not acting under color of state law. *Cole v. City of Chicago*, 2008 WL 68687, at *4 (N.D. Ill. Jan. 4, 2008). At this stage of the case the Court will allow Plaintiff to proceed (as limited below) on this theory, although it would welcome briefing on the subject if the parties feel it appropriate.

Presuming that prison nurses may be liable for failure to intervene, Plaintiff has adequately stated a claim against Emgelage and Lang. Plaintiff claims that Emgelage and Lang knew when John Doe #1 told them to leave the room that he was going to beat Plaintiff. While Plaintiff does not suggest what Emgelage and Lang could have done to prevent the beating, the Seventh Circuit has taken a broad view of what a "realistic opportunity to intervene" may be, including calling for help or "at least caution[ing] the excessive force defendant to stop." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (*citing Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994)). Plaintiff has not pled any facts, however, to support a claim that Williams knew that a constitutional violation was (or was about to be) committed in the examination room in real time. Plaintiff states

that Williams had already left the examination room by the time John Doe #1 entered and asked the nurses to leave. Plaintiff does not plead anything to suggest Williams had the requisite knowledge before or during the examination room assault. As such, Plaintiff's claim against Emgelage and Lang on Count 1 shall proceed but is dismissed without prejudice as to Williams.

**Count 2**

Plaintiff claims that he was singled out for disparate treatment due to his involvement by the in the preceding physical altercation with prisoners and corrections officials. Specifically, he alleges that the correctional officer Defendants beat him because of it, and that the HCU Defendants (Williams, Lang, and Emgelage), failed to fully treat his injuries. The Equal Protection Clause "prohibits the singling out of a person for different treatment for no rational reason." *Swanson v. City of Chetek*, 719 F.3d 780, 783–84 (7th Cir. 2013) (*citing Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To state a class-of-one equal protection claim, an individual must allege that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

Here, Plaintiff has failed to adequately plead an equal protection claim. As to the HCU Defendants, Plaintiff has not suggested that the HCU staff intentionally treated him differently from another inmate when a corrections officer orders them out of a room or that being ordered out of the examination room was not a rational basis for their behavior. Similarly, Plaintiff has not pled that he was treated differently from other similarly situated inmates by the corrections officer Defendants. As horrifying as it may be, such treatment may not be unique to Plaintiff, who has not stated anything more than a bare legal conclusion. As such, Count 2 is dismissed without prejudice.

## Count 3

Plaintiff states a claim deliberate indifference to a serious medical need against Lang and Emgelage, but not Williams. The Eighth Amendment prohibits the wanton and unnecessary infliction of pain on incarcerated persons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This can include the denial of necessary medical care. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). An inmate pursuing an Eighth Amendment claim must establish: (1) a serious medical condition (objective element); and (2) an official's deliberate indifference to that condition (subjective element). *Id.*

Plaintiff has alleged that he was beaten on the way to the HCU, but his pleading is ambiguous as to whether Emgelage and Lang knew that he had any injuries or conditions which needed treatment other than O.C. decontamination. On the one hand, he pleads that he had "obvious medical injuries" when he arrived at the HCU and that Lang and Emgelage "did not tend to the injuries on [his] body and face." (Doc. 1, p. 8). On the other hand, Plaintiff alleges that he arrived at the HCU "needing simple O.C. pepper spray decontamination." *Id.*, p. 10. At this stage of pleading the Court cannot resolve this apparent ambiguity, but giving Plaintiff the benefit of all reasonable inferences, the claim survives as to Lang and Emgelage. By contrast, Plaintiff has not pled any facts to suggest that Williams was indifferent to his injuries. She left Plaintiff in the examination room with two other nurses, who subsequently administered at least some medical care. There is no indication of indifference on her part, and so Count 3 is dismissed as to Williams.[4]

---

[4] To the extent Plaintiff may be attempting to claim deliberate indifference to the injuries allegedly inflicted in the examination room, there are no facts pled to suggest any of the HCU Defendants knew of the injuries after they were inflicted and failed to take action.

**Count 4**

To state a claim for failure to protect, a plaintiff must allege facts from which a court could conclude that he faces a substantial risk of serious harm, and that the defendants knew of and disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). As to the HCU Defendants, the analysis largely follows the failure to intervene claim discussed above. Taking Plaintiff's allegations as true, Lang and Emgelage knew that Plaintiff was going to be beaten when they were asked to leave the examination room and failed to take any steps to address the risk that he would be harmed. Again, however, there is no indication that Williams knew of this risk prior to the beating. As such, Count 4 will be dismissed as to Williams but proceed as to Lang and Emgelage.

**Count 5**

A Section 1983 conspiracy claim requires that "(1) the individuals reached an agreement to deprive [a plaintiff] of his constitutional rights, and (2) overt acts in furtherance that actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002) ("it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with."). Agreement "may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

Here, Plaintiff has adequately alleged a conspiracy amongst Bebout, Roundtree, Webb, Eisenhouer, and John Doe #1 to violate his Eighth Amendment rights by assaulting him in the

8

examination room. Drawing all reasonable inferences in Plaintiff's favor at this point, a jury could conclude that the apparently coordinated effort to isolate Plaintiff and injure him was the result of an explicit or tacit agreement between them.

Similarly, Plaintiff has stated a claim that the HCU Defendants participated in the conspiracy as it related to the beating in the examination room. Plaintiff alleges Emgelage and Lang knew that John Doe #1 was going to assault him when they were asked to leave the room. The Court cannot say that, as a matter of law, their compliance with that request and subsequent failure to take any action to warn anyone of what was about to happen is insufficient to constitute "agreement" to the scheme. As to Williams, her alleged participation after the assault by drafting a falsified incident report to cover it up raises at least a plausible claim that she agreed to the scheme. As such, Plaintiff has adequately stated a claim as to these defendants as well.

Plaintiff has not adequately pled a conspiracy claim as to the remaining John Doe defendants. There is no allegation that the assault on the way to the HCU was the result of any agreement rather than a spontaneous action. As such, Count 5 is dismissed as to the remaining John Does.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which will be denied at this time. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (articulating the test for recruiting counsel). The record shows Plaintiff has made adequate efforts to retain counsel. The case does not appear to be very complex, however. As to Plaintiff's current ability to represent himself, the Court notes that Plaintiff's writings have been adequately well-written and easy to understand. Although Plaintiff may lack education and be somewhat constrained by his incarcerated status, he appears competent to proceed on his own for the time being. Should Plaintiff experience any

specific difficulties in conducting merits discovery and files another motion for counsel, the Court will reconsider its decision at that time.

### DISPOSITION

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** without prejudice. Defendant Illinois Department of Corrections is **DISMISSED** without prejudice, and the Clerk of Court is **DIRECTED** to terminate it from the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that **COUNT 1** will proceed against Lt. Bebout, Donald Roundtree, Jonathan Webb, Bryan Eisenhouer, Aimee Lang, Reva Emgelage, John Doe #1, and the other John Doe defendants**.** It is **DISMISSED** without prejudice as to A. Williams. **COUNTS 3 and 4** will proceed as to Aimee Lang and Reva Emgelage, but are **DISMISSED** without prejudice as to A. Williams. **COUNT 5** will proceed against Lt. Bebout, Donald Roundtree, Jonathan Webb, Bryan Eisenhouer, Aimee Lang, Reva Emgelage, John Doe #1, and A. Williams, but is **DISMISSED** without prejudice as to the remaining John Doe defendants.

The Clerk is further **DIRECTED** to add the Warden of Menard, in his official capacity only, to the docket for the purposes of identifying the John Doe defendants.

**IT IS FURTHER ORDERED** that the Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS ORDERED** that the Clerk of Court shall prepare for Lt. Bebout, Donald Roundtree, Jonathan Webb, Bryan Eisenhouer, Aimee Lang, Reva Emgelage, A. Williams, and the Warden of Menard: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as

identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order. As the Warden of Lawrence Correctional Center is in the case solely for discovery purposes, he need not respond to the Complaint. The Warden only needs to enter his appearance. He will receive further instruction on discovery at a later date.

**IT IS ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, whether or not his *in forma pauperis* application is granted. 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 16, 2019**

 

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.