IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELROY HENDERSON, | ) |
| | ) |
|          **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 3:19 -CV-00432 -MAB |
| | ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, ET AL., | ) ) |
| | ) |
|          **Defendants.** | |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Frank Lawrence,[1] Nicholas Bebout, Donald Rountree, Brian Eisenhauer, Reva Engelage, Aimee Lang, Augusta Williams, and Jonathan Webb's motion, and supporting memorandum, for summary judgment (Docs. 27, 28). Plaintiff filed his response to the motion for summary judgment on September 10, 2020 (Doc. 35). For the reasons set forth below, the motion is **GRANTED in part and DENIED in part**.

### BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 18, 2019 for deprivations of his constitutional rights while incarcerated at Menard Correctional Center ("Menard") (Doc. 1, 6). Plaintiff claims that while he was housed at Menard,

---

[1] Defendants list Frank Lawrence as a current Defendant in their motion, and supporting memorandum, for summary judgment (Docs. 27, 28); however, he was dismissed through the Court's Order entered on July 24, 2020, filed after Defendants filed their motion for summary judgment (Doc. 30).

Page 1 of 15

officials used excessive force upon him, failed to intervene, and were deliberately indifferent to his serious medical needs (Docs. 1, 6). After a threshold review, pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on four counts against Defendants:

> **Count 1:** Eighth Amendment excessive force claim against Webb, Rountree, Bebout, and Eisenhauer, as well as a failure to intervene claim against Lang and Engelage;
>
> **Count 2:** Eighth Amendment deliberate indifference to a serious medical need claim against Lang and Engelage.
>
> **Count 3:** Eighth Amendment failure to protect claim against Lang and Engelage.
>
> **Count 4:** Conspiracy claim against Defendants Bebout, Roundtree, Webb, Eisenhauer, Lang, Engelage, and Williams.[2]

Defendants Webb, Rountree, Bebout, Eisenhauer, Lang, Williams, and Engelage filed their motion for summary judgment on July 6, 2020, arguing that Plaintiff failed to exhaust administrative remedies before filing this action (Docs. 27, 28). Plaintiff filed a response to the motions for summary judgment on September 10, 2020 (Doc. 35). Because the parties' filings do not involve a genuine issue of material fact, no evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

**LEGAL STANDARDS**

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R.

---

[2] Certain John Doe Defendants were also included in Plaintiff's claims; however, they were dismissed through the Court's July 24, 2020 Order (Doc. 30). Menard's Warden, Frank Lawrence, was also dismissed at this time, as he was added in his official capacity to help identify the John Doe Defendants (Doc. 6).

CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see*

*also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[3] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an

---

[3] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## FACTUAL BACKGROUND

At all relevant times, Plaintiff has been an inmate with the Illinois Department of Corrections ("IDOC"). He is currently incarcerated at Pontiac Correctional Center ("Pontiac") (Doc. 28, p. 2). Plaintiff alleges that he was involved in a physical altercation with several correctional officers and prisoners on or around April 23, 2017 while housed at Menard (Doc. 6, p. 2). He was sprayed with oleoresin capsicum ("O.C.") spray and placed in restraints (*Id.*). While being escorted to the Healthcare Unit ("HCU"), he was assaulted again by Defendant Webb and other unknown correctional officers.

Plaintiff contends that Defendants Williams and Engelage (HCU nurses) took him to the exam room, where they were met by another nurse, Defendant Lang. Plaintiff says that Williams then left the room while Lang filled out paperwork and Engelage rinsed off the O.C. spray (*Id.*). Then, a few unknown correctional officers asked the nurses to leave the room, which they did. Defendants Bebout, Rountree, Webb, Eisenhauer, and an

unknown correctional officer severely beat Plaintiff, including spraying O.C. into a plastic bag and placing it over his head (*Id.*). Plaintiff sustained severe injuries that required him to be rushed to the hospital, and Plaintiff contends he still has significant permanent physical and mental injuries. Lastly, Plaintiff alleges that Defendant Williams falsified an incident report to cover up the circumstances of the assault in the examination room (*Id.*).

In the record, there are approximately seven grievances that Plaintiff filed after the April 23, 2017 incident (Doc. 28-1, p. 1).[4]

Defendants contend that Plaintiff sent two relevant grievances to the Administrative Review Board ("ARB") about the issues in this case. The first, dated May 22, 2017, describes Defendant Bebout's actions from the incident on April 23, 2017 (Doc. 28-1, p. 16). Plaintiff agrees that the May 22, 2017 grievance details issues related to cruel and unusual punishment, as well as excessive force (Doc. 35, p. 1, 9). The second, dated June 4, 2017, describes Plaintiff not receiving fair treatment at the adjustment committee hearing related to the altercation that took place on April 23, 2017 (Doc. 28-1, p. 18). Defendants argue that only the first grievance, dated May 22, 2017, was properly exhausted prior to the filing of this lawsuit; therefore, Plaintiff can only proceed on his excessive force claim related to Defendant Bebout (Doc. 28, p. 2).

---

[4] The grievances are dated as received by the ARB on July 12, 2017 (grievance dated April 20, 2017); July 27, 2017 (grievance dated July 6, 2017); August 2, 2017 (grievance dated July 9, 2017); October 12, 2017 (grievance dated September 27, 2017); October 23, 2017 (grievance dated May 22, 2017 and June 4, 2017)); November 14, 2017 (grievance dated May 22, 2017); and June 11, 2018 (grievance dated April 22, 2018) (Doc. 28-1, p. 1).

Plaintiff's May 22, 2017 grievance describes the April 23, 2017 incident, where Plaintiff was involved in an assault (Doc. 28-1, p. 16). He explains that multiple staff members were involved, including naming Defendants Webb, Rountree, and Bebout (Doc. 28-1, pp. 16-17). Plaintiff explains that once he was handcuffed, "staff commenced to kicking him, standing on, and bending…[Plaintiff's] arms and legs" (Doc. 28-1, pp. 16-17). He details that staff placed him in one of the small operation rooms near the HCU, where they then "perform[ed] torture tactics." (Doc. 28-1, p. 17). Specifically, Plaintiff outlines that Defendant Bebout placed a plastic bag over his head and then sprayed CO spray into the bag repeatedly until Plaintiff passed out (Doc. 28-1, p. 17). Staff tightened Plaintiff's handcuffs, cutting off his circulation (Doc. 28-1, p. 17). Plaintiff contends that Menard's nurses were informed as to what happened, but "would not give aid to" Plaintiff for his injuries, including a "bruised hip, bruised and swollen hands, bruised ankle and foot, shoulder, and back pain" (Doc. 28-1, p. 17). Finally, Plaintiff explains he was hospitalized for the injuries he suffered from this alleged attack by Menard staff members (Doc. 28-1, p. 17).

Plaintiff's June 4, 2017 grievance details that after the April 2017 incident, he was immediately transferred to Pontiac from Menard (Doc. 28-1, p. 18). He was told that the incident was an ongoing investigation, but then was issued a disciplinary ticket for the incident, so he requested, in this grievance, to be provided with a "proper hearing in accordance to 504" (Doc. 28-1, p. 18).

Plaintiff sent the May and June grievances together to the ARB, where they were denied as the office found there was "no violation of the offender's due process…[and

the] office is reasonably satisfied the offender committed the offense cited in the report" (Doc. 28-1, p. 15).

As for Plaintiff's other grievances, they do not appear to be related to the present issues. Plaintiff's July 6, 2017 grievance is unrelated to this case as it details issues with his personal property after he was transferred to Pontiac from Menard (Doc. 28-1, p. 43). Plaintiff's July 9, 2017 grievance is about Plaintiff not receiving mental health-related medications and names several mental health professionals, none of whom are named as Defendants in this case (Doc. 28-1, p. 38). Plaintiff's September 27, 2017 grievance details issues stemming from a September 12, 2017 search of Plaintiff's cell (Doc. 28-1, p. 35). Finally, Plaintiff's April 22, 2018 grievance details issues with Plaintiff being placed in segregation while at Pontiac (Doc. 28-1, p. 3).

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 with respect to prison conditions must first exhaust all administrative remedies. *See* 42 U.S.C §1997e (a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008). Defendants contend that Plaintiff sent two relevant grievances to the ARB about the issues in this case: the May 22, 2017 and June 4, 2017 grievances (Doc. 28-1, pp. 16-18). Defendants argue that Plaintiff's grievances failed to either identify or speak of any actions taken by Defendant Rountree, Eisenhauer, Engelage, Lang, Williams, or Webb (Doc. 28, p. 4). With that said, Defendants concede that one of Plaintiff's grievances does allege the Defendant Bebout used pepper spray in a bag over Plaintiff's head while

he was in the HCU; therefore, only Plaintiff's excessive force claim against this one Defendant can proceed (Doc. 28, p. 4).

Plaintiff contends he did not know all of the names of the current Defendants until the case started and the parties exchanged written documents; therefore, he could not include the specific names of individuals in his grievances (Doc. 35, p. 2). Additionally, Plaintiff argues that he referred to Engelage, Lang, and Williams as "nurses" in his grievance because he did not know their names at the time of filing the grievance (Doc. 35, p. 2).

The Court agrees with Defendants that the two relevant grievances are Plaintiff's May 22, 2017 and June 4, 2017 grievances. At some point between the April 2017 incident and filing these grievances, Plaintiff was transferred from Menard to Pontiac, as evident by Plaintiff listing "Pontiac" as his current facility on these grievances (Doc. 28-1, p. 16). Normally, a prisoner cannot appeal a grievance directly to the ARB; rather, they must go through internal channels of review at their facility before sending the grievance to the ARB. But the Administrative Code provides that when a prisoner is grieving issues that pertain to a facility "other than the facility where the offender is currently assigned," the prisoner may file his grievance directly with the ARB. ILL. ADMIN. CODE, Tit. § 504.870(a)(4).

As an initial matter, although the June 4, 2017 grievance briefly details the alleged assault, the focus of the grievance is that Plaintiff was not provided with a fair hearing as to his involvement in this assault, which is not at issue in this case (Doc. 28-1, pp. 18-19). As such, the Court now turns its attention to the May 22, 2017 grievance.

Defendants admit that Plaintiff's May 22, 2017 grievance was properly exhausted prior to filing this lawsuit, but that this grievance only pertains to Plaintiff's excessive force claim against Defendant Bebout alone (Doc. 28, p. 2). It is unclear from Defendants' motion for summary judgment *why* they believe this grievance only applies to one Defendant and one claim, as Defendants' substantive arguments on the matter are two paragraphs in length and rely on conclusory statements (Doc. 28, pp. 4-5).

Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted); *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

The Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c). Plaintiff writes the names of three Defendants in this May 22, 2017 grievance:

Rountree, Webb, and Bebout (Doc. 28-1, pp. 16-17). Additionally, he detailed that other correctional officers were involved in the alleged beating (*Id.*). In terms of Plaintiff's descriptions of medical professionals in the HCU, he wrote, "Nurses was[sic] well informed but would not give aid to…Henderson's body at all injuries" (Doc. 28-1, p. 17). He continues and states that his injuries would "go undocumented by Menard's HCUnit Nurses" (*Id.*).

Plaintiff argues in his response to Defendants' motion for summary judgment that he included the names of the individuals he knew at the time of filing his grievance (Doc. 35). Additionally, Plaintiff described in detail the alleged assault and how both correctional officers and HCU nurses did not help him. The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). Additionally, the Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably expect from a prisoner *in his position*." *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 U.S. App. LEXIS 14361, at *6-7 (7th Cir. July 13, 2010). Plaintiff provided the specific names he knew and provided detailed information about the incident he was grieving. Simply put, Plaintiff did the best he could to grieve the situation as it unfolded based on what he knew *at the time*. Under these circumstances, Plaintiff's failure to specifically name all currently listed correctional officer and nursing Defendants did not limit the usefulness of the exhaustion requirement. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Certainly the May 22, 2017

grievance applies to Defendants Bebout, Rountree, and Webb since they are specifically named in it, but it also applies to Eisenhauer, as he was later identified as a correctional officer involved in the April 2017 incident through Plaintiff's complaint (Doc. 1). As for Defendants Lang, Engelage, and Williams, the Court finds that this grievance also applies to them, as Plaintiff named "nurses," and described how they would not provide him with care. In short, the May 22, 2017 grievance covers all current Defendants.

Plaintiff is currently proceeding on four claims, so now the Court must determine which of those claims are covered by this grievance. The May 22, 2017 grievance details the alleged assault by correctional officers and therefore applies to Plaintiff's excessive force claim against Defendants Webb, Rountree, Bebout, and Eisenhauer, and this claim will continue (Doc. 28-1, p. 16). Also included in this first claim is a failure to intervene claim against Defendants Lang and Engelage. However, Plaintiff's grievance does not give any indication of how the nurses were aware of the alleged assault and failed to stop it. Rather, the main focus for the nurses is that they failed to provide him with medical care. As such, the failure to intervene claim against Defendants Lang and Engelage in count one will be dismissed, while Plaintiff's second count, a deliberate indifference to a serious medical need claim against Defendants Lang and Engelage will continue.

As for Plaintiff's last two counts, which are a failure to protect claim against Defendants Lang and Engelage and then a conspiracy claim against all Defendants, including Williams; these claims will be dismissed without prejudice.[5] As previously

---

[5] The conspiracy claim is the only claim against Williams.

noted, the thrust of Plaintiff's grievance against Defendants Lang and Engelage is that they did not provide him with medical care. It cannot be used to exhaust a failure to protect claim against the nurses. Moreover, the grievance is devoid of any information to put prison officials on notice that the Defendants engaged in some sort of agreement to hurt him or hide the assault. In other words, there is nothing about a conspiracy in the grievance. While Plaintiff alleges in his complaint that Defendants Lang and Engelage knew of the assault and did nothing to protect him, these types of details are missing from the exhausted grievance. As such, counts three and four will be dismissed.

As for this grievance's path from Plaintiff to the ARB, it was sent directly to the ARB on June 8, 2017, as Plaintiff was incarcerated at Pontiac and grieving issues that occurred at Menard. The Illinois Code details that offenders shall submit their grievances directly to the ARB when grieving issues that occurred at another facility from the facility in which they are currently incarcerated "except [grievances relating to] personal property and medical issues" ILL. ADMIN. CODE., Tit. § 504.870(a)(4). Perhaps this is why Defendants do not believe that some of Plaintiff's claims can move beyond this stage, as his grievance includes a description of some medical issues. But had Defendants made this argument explicitly, it would still be unavailing.

The ARB responded to the substance of the May 22, 2017 grievance, detailing that the grievance appeal was being denied as the ARB found that "staff misconduct allegations were not substantiated" (Doc. 28-1, p. 15). When prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting prison officials, inviting corrective action,

and Defendants cannot rely on the failure to exhaust defense. *Maddox*, 655 F.3d at 722 (internal citations omitted). Here, the ARB did not notify Plaintiff that his medical claims were improperly brought in front of the ARB; rather, the ARB responded to the content of Plaintiff's grievances. As such, this grievance was properly filed and the Court deems the contents fully exhausted.

## Conclusion

Defendants motion for summary judgment is **GRANTED in part and DENIED in part**. Specifically, it is **DENIED** as to Plaintiff's Eighth Amendment excessive force claim against Defendants Webb, Rountree, Bebout, Eisenhauer (Count I); it is **GRANTED** as to the failure to intervene claim contained in Count I against Defendants Lang and Engelage. It is **DENIED** as to Plaintiff's Eighth Amendment deliberate indifference to a serious medical need claim against Defendants Lang and Engelage (Count II). It is **GRANTED** as to Plaintiff's failure to protect claim against Lang and Engelage (Count III); and it is **GRANTED** as to Plaintiff's conspiracy claim against all Defendants (Count IV).

Defendant Williams is **DISMISSED without prejudice** from this action. The case shall proceed only on the following counts:

> **Count 1:** Eighth Amendment excessive force claim against Webb, Rountree, Bebout, and Eisenhauer;
>
> **Count 2:** Eighth Amendment deliberate indifference to a serious medical need claim against Lang and Engelage.

All other claims are **DISMISSED without prejudice** for Plaintiff's failure to exhaust. The stay on merits-based discovery (*see* Doc. 24) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: April 19, 2021**

s/ Mark A. Beatty
MARK A. BEATTY
United States Magistrate Judge